# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES LOCAL 2401, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br><br>Defendant. | Civil Action 09-01804 (HHK) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, a group of African-American and Latino employees and former employees of the District of Columbia Department of Health Care Finance ("DHCF"), and the union that represents them, bring this action against the District of Columbia under 42 U.S.C. § 1981; 42 U.S.C. § 1983; the District's municipal personnel regulations, D.C. MUN. REGS. tit. 6, § 2400 *et seq.*; and the D.C. Human Rights Act, D.C. CODE § 2-1401 *et seq.* Plaintiffs allege that when the District reorganized DHCF in 2008 and 2009, it selectively terminated older minority employees while it simultaneously protected less senior, less experienced, predominantly White employees from termination. Before the Court is the District's motion to dismiss for failure to state a claim upon which relief may be granted [#39]. Upon consideration of the motion, the opposition thereto, and the record of this case, the Court concludes that the motion must be granted in part and denied in part.

# I. BACKGROUND

On October 1, 2008, the D.C. Department of Health was officially redesignated the Department of Health Care Finance, which the District described as an "entity that would improve health outcomes by providing access to comprehensive, cost-effective, and quality healthcare services for the residents of the District of Columbia." 3d Am. Compl. ¶ 3 (quoting Letter from DHCF Director Julie Hudman to DHCF employees (Aug. 31, 2009)) (internal quotation marks omitted). As part of the reorganization that followed, DHCF conducted a reduction-in-force ("RIF") that resulted in the termination of seventy-eight DHCF employees, the vast majority of whom were African-American. 3d Am. Compl. ¶ 16. Plaintiffs allege that a "specifically identified group of Caucasian employees," predominantly young recent hires, was deliberately excluded from the RIF. 3d Am. Compl. ¶¶ 10, 23–26. DHCF also created a new set of positions with qualifications different from those of the jobs from which plaintiffs were terminated, but which, plaintiffs aver, involve almost identical work.

Plaintiffs allege that DHCF had no legitimate business reason to undertake the RIF. They further assert that DHCF "intentionally and maliciously employed racially biased and aged biased criteria to determine the extent to which then existing long term employees were now qualified for 'new' positions in which they would be doing essentially the same exact work." 3d Am. Compl. ¶ 21. As a result of these criteria, "a number of well-educated and experienced [p]laintiffs were unable to qualify for the newly advertised and rewritten positions . . . . Further, several [p]laintiffs were required to take new jobs in which they earned less pay." 3d Am. Compl. ¶ 22.

Plaintiffs filed this action on September 21, 2009. Their complaint, as amended, includes four counts: (1) race and age discrimination in violation of the Equal Protection Clause, pursuant to 42 U.S.C. § 1983; (2) race discrimination in violation of 42 U.S.C. § 1981; (3) violations of the D.C. personnel regulations that govern municipal RIFs; and (4) race and age discrimination in violation of the D.C. Human Rights Act. The District now moves to dismiss the complaint on the ground that none of these counts states a claim upon which relief may be granted.

## II.  ANALYSIS

### A.  *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal* Govern Here

Before turning to the merits of the District's motion, the Court will briefly address a contention that plaintiffs have repeatedly put forth in this case. Plaintiffs argue that the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, —U.S.—, 129 S. Ct. 1937 (2009), are limited to their specific facts or doctrinal contexts and do not provide the pleading standard by which their race and age discrimination claims are to be gauged. Plaintiffs are wrong. *Twombly* and *Iqbal* are universally recognized as having modified the basic pleading standard in *all* federal civil cases. *See Iqbal*, 129 S. Ct. at 1953 (stating that *Twombly* construed Federal Rule of Civil Procedure 8, which "governs the pleading standard 'in all civil actions'" (quoting FED. R. CIV. P. 1)). Precisely how far *Twombly* and *Iqbal* depart from the preexisting standard, articulated in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), is open to debate, but courts and commentators alike understand them to have supplanted it.[1]

---

[1]  *See, e.g., Jones v. Horne*, 634 F.3d 588, 596 n.4 (D.C. Cir. 2011) (describing the now-defunct *Conley* standard as "somewhat more lenient" than the *Twombly*/*Iqbal* standard); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (noting the tension between the new "plausibility" standard and the Supreme Court's admonition that "fact pleading" is not

Consequently, plaintiffs' ability to state a claim upon which relief may be granted will be judged with reference to the standard articulated in *Twombly* and *Iqbal*.[2] That standard does not call for detailed factual allegations, but it does require a complaint to recite facts sufficient to at least "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557) (alterations in original). At bottom, a complaint must contain sufficient factual matter that, accepted as true, would allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court will now address whether such an inference is possible here.

**B.      The Merits of the District's Motion**

    **1.      Count I: 42 U.S.C. § 1983**

"To state a claim for relief in an action brought under § 1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v.*

---

required); *see generally* Arthur R. Miller, *From* Conley *to* Twombly *to* Iqbal: *A Double Play on the Federal Rules of Civil Procedure*, 60 DUKE L. J. 1 (2010).

    [2]      Accordingly, the Court will not evaluate plaintiffs' claims, as they urge, under the prima facie standard established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). "*McDonnell Douglas* . . . sets forth an evidentiary standard, not a pleading requirement." *Amiri v. Hilton Wash. Hotel*, 360 F. Supp. 2d 38, 41 (D.D.C. 2003) (citing *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002)); *see Bryant v. Pepco*, 730 F. Supp. 2d 25, 28–29 (D.D.C. 2010) (collecting cases holding that *Swierkiewicz* survived *Twombly* and *Iqbal*).

*Sullivan*, 526 U.S. 40, 49–50 (1999).[3] Here, plaintiffs allege that DHCF's reorganization violated their right to the equal protection of the laws as enshrined in the Fourteenth Amendment, which applies to the District of Columbia via the Fifth Amendment's Due Process Clause. *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). "The central purpose of the Equal Protection Clause . . . is the prevention of official conduct discriminating on the basis of race," *Washington v. Davis*, 426 U.S. 229, 239 (1976), but the Clause reaches any government action that treats groups of people differently on the basis of arbitrary or irrational classifications. *Engquist v. Or. Dept. of Agr.*, 553 U.S. 591, 601 (2008). It does not, however, prohibit government action that has a disproportionate effect on a discrete group but lacks a "discriminatory purpose." *Davis*, 426 U.S. at 240. Thus, to plead a viable equal protection claim, a plaintiff must allege that "a decisionmaker[] undert[ook] a course of action 'because of, not merely in spite of, [the action's] adverse effects upon an identifiable group.'" *Iqbal*, 129 S. Ct. at 1948 (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)) (third alteration in original).

Plaintiffs' § 1983 claim alleges that the District "reorganized DHCF in such a way as to selectively terminate more senior African-American employees while simultaneously protecting and excluding less senior, inexperienced, predominantly Caucasian employees." 3d Am. Compl. ¶ 29. Plaintiffs bolster this claim by pointing to the disparate impact of the RIF on African-American employees, *see* 3d Am. Compl. ¶¶ 8–16, and to an email appended to the complaint that describes a systematic effort to alter personnel ratings in favor of young, recently hired Whites. *See* 3d Am. Compl. Ex. B (email from Candice Graham to Iyanam Eyo (Jan. 5, 2010)).

---

[3] The District does not dispute that DHCF's reorganization occurred "under color of state law" for § 1983 purposes.

The District argues that plaintiffs have failed to plead an equal protection violation because they have not alleged any facts showing that DHCF's reorganization had a discriminatory purpose, rather than a discriminatory impact. The District further argues that many of plaintiffs' allegations are too conclusory to warrant an assumption of truth. The District's arguments are unavailing.

Read *in toto* and in conjunction with the documents attached to it, plaintiffs' amended complaint states a plausible claim of purposeful discrimination. First, although the disparate impact that plaintiffs describe is not, by itself, sufficient to establish an equal protection violation, *see Davis*, 426 U.S. at 240, it is probative of purposeful discrimination. *See id.* at 242 ("[A]n invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including [a disparate impact]."); *accord Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). Second, the documents appended to the complaint, which the Court may properly consider when ruling on a motion to dismiss, *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006), describe in detail a systematic effort by DHCF personnel to modify personnel ratings in favor of young, recently hired Whites. *See* 3d Am. Compl. Ex. B. Considered together, these allegations are "suggestive of illegal conduct." *Twombly*, 550 U.S. at 563 n.8; *see Arlington Heights*, 429 U.S. at 267 (stating that "[d]epartures from the normal procedur[e]" can afford evidence that a decision was motivated by discriminatory purpose).[4]

---

[4] In relying on the email attached to plaintiffs' complaint, the Court does not treat that email as conclusively establishing the events described therein; rather, the Court simply treats the email as presenting factual allegations that must, for the purposes of this motion only, be accepted as true. It is thus irrelevant that the email is "un-sworn hearsay, without evidentiary value." Def.'s Opp'n to Pls.' Mot. to File 3d Am. Compl. [#31] at 2.

Further, the Court cannot identify an "obvious alternative explanation" for the alleged conduct that would render an inference of discrimination implausible. *See Iqbal*, 129 S. Ct. at 1951 (quoting Twombly, 550 U.S. at 567) (internal quotation marks omitted); *cf. Davis*, 426 U.S. at 242 ("[D]iscriminatory impact . . . may for all practical purposes demonstrate unconstitutionality because in [certain] circumstances the discrimination is very difficult to explain on nonracial grounds."). This case is thus distinguishable from *Iqbal*, where the Supreme Court held that the case had to be dismissed because the "complaint d[id] not contain any factual allegation sufficient to plausibly suggest [the defendants'] discriminatory state of mind." *Iqbal*, 129 S. Ct. at 1952. The *Iqbal* Court reached that conclusion after determining that the defendants' conduct could easily be explained by legitimate law enforcement concerns, which greatly decreased the plausibility of Iqbal's claims of discrimination. *See id*. at 1951–52 ("As between that 'obvious alternative explanation' for the [challenged conduct], and the purposeful, invidious discrimination [the plaintiff] asks us to infer, discrimination is not a plausible conclusion." (internal citation omitted) (quoting *Twombly*, 550 U.S. at 567)). Here, by contrast, the District's explanation for plaintiffs' terminations — that DHCF had adopted a new structure and required a workforce with commensurate abilities — cannot plausibly account for the alleged practice of altering personnel records in favor of young, newly hired White employees at the expense of longer-tenured African Americans. In the words of *Iqbal*, this explanation does not allow the Court to conclude, on the facts alleged by plaintiffs, that DHCF's actions were "likely lawful." *Iqbal*, 129 S. Ct. at 1951.

Additionally, plaintiffs' complaint provides as much or more detail and "factual heft," *Winston v. Clough*, 712 F. Supp. 2d 1, 13 (D.D.C. 2010), as have others that have been held to

state a claim of discrimination under *Twombly* and *Iqbal*. For example, in *Hamilton v. District of Columbia*, 720 F. Supp. 2d 102 (D.D.C. 2010), the court held that the plaintiffs, a group of African-American firefighters, had stated a valid § 1983 claim by alleging that the fire department had "compiled a list of African American Firefighters that it wanted to terminate." *Id.* at 113. The court found that the plaintiffs had stated a claim, albeit "only by a hair's breadth," *id.*, notwithstanding the fact that "the complaint include[d] no further information about when, by whom or how the alleged list was compiled or subsequently discovered" and "d[id] not allege explicitly that the firefighters on this list were included *because* they were African American." *Id.* at 113 n.7. Here, plaintiffs' complaint and the attached documents provide significantly more detail about the defendant's allegedly discriminatory practices, including the identities of some of the personnel involved and descriptions of some of the steps taken to disadvantage older African-American workers. *See* 3d Am. Compl. Ex. B.[5]

Finally, the Court cannot agree with the District that plaintiffs have not stated a claim because they have failed to specify which particular allegations in the complaint apply to which plaintiffs. Contrary to the District's assertion, the complaint does not simply list the thirty individual plaintiffs; rather, it identifies those plaintiffs who were "terminated for purposes of Counts I and III" and those plaintiffs who were "terminated and rehired." 3d Am. Compl. ¶ 2.

---

[5] Plaintiffs' allegations are also more substantial than those in *Atherton v. D.C. Office of Mayor*, 567 F.3d 672 (D.C. Cir. 2009), on which the District relies. There, the D.C. Circuit held that the plaintiff had failed to state a § 1983 racial and/or ethnic discrimination claim where he had alleged only that he had been removed from a grand jury after revealing that he spoke Spanish fluently. *See id.* at 688. The D.C. Circuit explained that those allegations "d[id] 'not permit the court to infer more than the mere possibility of misconduct.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950). The complaint in *Atherton* was entirely speculative and involved no specific descriptions of misconduct like those contained in the pleadings here.

Read in conjunction with the rest of the complaint, these descriptions, although terse, make clear which plaintiffs were allegedly subjected to which unlawful practices. No more is required at this stage.

It is true, as the District points out, that plaintiffs' § 1983 claim is set forth amidst a barrage of conclusory assertions and adverbs. *See, e.g.*, 3d Am. Compl. ¶ 47 ("Defendant . . . intentionally, calculatedly and maliciously eliminated older and predominantly African-American workers . . . ."). But "many well-pleaded complaints are conclusory" to some degree. *Holmes-Martin v. Leavitt*, 569 F. Supp. 2d 184, 191 (D.D.C. 2008). Plaintiffs' complaint contains just enough non-conclusory factual matter to "nudge[] [plaintiffs'] claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Whether plaintiffs can prevail on that claim is a separate question, but one that is not currently before the Court; plaintiffs have "said enough to continue past this stage of the proceedings." *Ali v. D.C. Gov't*, 697 F. Supp. 2d 88, 92 (D.D.C. 2010). Accordingly, the District's motion is denied as to Count I.

2. **Count II: 42 U.S.C. § 1981**[6]

---

[6] There is a circuit split as to whether a plaintiff alleging a violation of § 1981 by state or municipal actors has a cause of action under § 1981 itself, or must instead sue under § 1983. *Compare Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1210–14 (9th Cir. 1996), *with McGovern v. City of Philadelphia*, 554 F.3d 114, 116–121 (3d Cir. 2009). The only difference, if any, between these two interpretations is that a § 1981 cause of action *might* allow for *respondeat superior* municipal liability, whereas § 1983 definitely does not. *See Felton v. Polles*, 315 F.3d 470, 482 (5th Cir. 2002); *but see Evans v. City of Houston*, 246 F.3d 344, 358 (5th Cir. 2001) (no *respondeat superior* liability under either theory). Here, because the District does not dispute that plaintiffs' complaint satisfies the municipal liability requirement, this distinction is unimportant. Moreover, the D.C. Circuit has assumed, albeit without squarely deciding, that a § 1981 plaintiff, like a § 1983 plaintiff, must show a governmental policy or custom to establish municipal liability. *See Bush v. District of Columbia*, 595 F.3d 384, 286 (D.C. Cir. 2010).

42 U.S.C. § 1981 "has a specific function: It protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (quoting 42 U.S.C. § 1981(a)) (alteration in original).[7] Like the Equal Protection Clause, § 1981 reaches only purposeful discrimination. *See Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 386–89 (1982). Here, plaintiffs allege that the discriminatory behavior that underpins their § 1983 claim also deprived them of the benefit of their collective bargaining agreement with the District. *See* 3d Am. Compl. ¶¶ 34–39.

The District challenges plaintiffs' § 1981 claim on two grounds. First, the District points out that although § 1981 bars only racial discrimination, plaintiffs' § 1981 claim appears to allege both race- and age-based discrimination. *See* 3d Am. Compl. ¶¶ 35–36. Second, as above, the District argues that plaintiffs have not alleged facts sufficient to suggest purposeful discrimination. The District's first point is well taken; § 1981 protects the rights of persons "to 'make and enforce contracts' *without respect to race*." *McDonald*, 546 U.S. at 474 (quoting 42 U.S.C. § 1981(a)) (emphasis added). Thus, to the extent that plaintiffs allege an age-based impairment of their ability to make or enforce a contract, their § 1981 claim may not proceed. As

---

[7] The statute defines "make and enforce contracts" to "include[] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). This broad language was intended to reverse *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989), which held that, in the employment context, § 1981 reached only race-based refusals to enter into contracts and not anything that happened thereafter. *See id.* at 176–77.

described above, however, plaintiffs have alleged facts sufficient to state a claim of purposeful *racial* discrimination. Accordingly, the District's motion is denied as to Count II.[8]

3.   **Count III: Violation of D.C. Reduction-in-Force Regulations**

Plaintiffs' third claim charges that DHCF's reorganization was unlawful because the newly hired White employees were excluded from the RIF, which, plaintiffs aver, was required by D.C. personnel regulations to be agency-wide. The District argues that this claim is deficient because plaintiffs do not explain how the District's regulations were violated and fail to allege that they have raised this claim before the D.C. Office of Employee Appeals, which has exclusive original jurisdiction over RIF-related claims. The Court agrees.

The Office of Employee Appeals ("OEA") is an independent agency of the District government created by the Comprehensive Merit Personnel Act ("CMPA"), D.C. CODE § 1-601.01 *et seq*. The OEA is empowered to "[h]ear and adjudicate appeals received from District agencies and from employees," *id*. § 1-606.02(a)(2), regarding final agency decisions, including RIFs. *Id*. § 1-606.03(a). The D.C. Court of Appeals has explained that the OEA's original jurisdiction over CMPA claims — including claims regarding the compliance of RIFs with applicable regulations — is normally exclusive. *See Wash. Teachers' Union, Local No. 6 v. D.C. Pub. Schs.*, 960 A.2d 1123, 1130–35 (D.C. 2008). "As a result, numerous courts in this Circuit have concluded that they lack jurisdiction to entertain employment-related claims brought

---

[8] Because the District does not dispute plaintiffs' ability to identify an impaired contractual relationship, *see McDonald*, 546 U.S. at 476, the Court does not address whether plaintiffs' collective bargaining agreement qualifies. *See id.* at 476 n.3 (declining to approve or disapprove of § 1981 suits by plaintiffs who have rights under, but are not parties to, an impaired contract). The Court notes, however, that § 1981 applies to employment relationships. *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 450 (2008); *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 459–60 (1975).

by District employees that fall within the province of the CMPA." *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 78 (D.D.C. 2007) (collecting cases). Because plaintiffs do not respond to the District's jurisdictional argument — let alone provide a reason why they were not required to raise their complaint before the OEA — the Court deems that argument conceded. *See Lewis v. District of Columbia*, 2011 WL 321711, at *1 (D.C. Cir. Feb. 2, 2011). Accordingly, the District's motion is granted as to Count III.

4. **Count IV: Violations of the D.C. Human Rights Act**

The D.C. Human Rights Act, D.C. CODE § 2-1401 *et seq.*, is designed to end discrimination "for any reason other than that of individual merit, including, but not limited to, discrimination by reason of race . . . [and] age." *Id*. § 2-1401.01. The Act specifically prohibits a range of employment actions that are taken "wholly or partially" because of those traits (among others). *Id*. § 2-1402.11. Unlike the Equal Protection Clause, the Act reaches not only purposeful discrimination but also any practices that "bear disproportionately on a protected class and are not independently justified for some nondiscriminatory reason." *Gay Rights Coal. of Georgetown Univ. Law Ctr. v. Georgetown Univ.*, 536 A.2d 1, 29 (D.C. 1987) (en banc) (citing D.C. CODE § 1-2532 (1987), *now codified at* D.C. CODE § 2-1402.68 (2001)); *accord Estenos v. PAHO/WHO Fed. Credit Union*, 952 A.2d 878, 887–88 (D.C. 2008). The Act thus incorporates "the concept of disparate impact discrimination." *Gay Rights Coal.*, 536 A.2d at 29 (citing *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971)).[9]

---

[9] Some decisions in this district have stated that the Human Rights Act, like § 1981, prohibits only intentional discrimination. *E.g.*, *Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 86 (D.D.C. 2006) (citing *Fox v. Giaccia*, 424 F. Supp. 2d 1, 6–7 (D.D.C. 2006)). To the extent that those decisions contradict the D.C. Court of Appeals's description of the Act's scope, the Court must disregard them. *See Indep. Petrochem. Corp. v. Aetna Cas. & Sur. Co.*,

Plaintiffs have plainly stated a claim for relief under the Human Rights Act. Because the Act reaches "unintentional discrimination as well as intentional," *Ramirez v. District of Columbia*, 2000 WL 517758, at *3 n.9 (D.D.C. 2000), plaintiffs have stated a claim thereunder either through a disparate treatment theory, as described above with regard to § 1981 and § 1983, or via a disparate impact theory. *See* 3d Am. Compl. ¶¶ 8–16 (describing the disparate impact of DCHF's RIF). Indeed, the District does not seriously dispute — and appears at times to concede, *see* Def.'s Mem. in Supp. of Def.'s Mot. to Dismiss at 7–8; Def.'s Reply to Pl.'s Opp'n at 8 — that plaintiffs have plead a plausible disparate impact claim. Accordingly, the District's motion is denied as to Count IV.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that plaintiffs have stated claims for relief under § 1981, § 1983, and the D.C. Human Rights Act; however, they have not stated a claim under the District's municipal personnel regulations.

Accordingly, it is this 12th day of July 2011 hereby

**ORDERED** that defendant's motion to dismiss [#39] is **GRANTED** as to Count III of plaintiffs' third amended complaint, and **DENIED** in all other respects.

Henry H. Kennedy, Jr.
United States District Judge

---

944 F.2d 940, 944 (D.C. Cir. 1991). Moreover, other federal decisions have recognized that the Act "prohibits unintentional discrimination as well as intentional." *Ramirez v. District of Columbia*, 2000 WL 517758, at *3 n.9 (D.D.C. 2000); *accord 2922 Sherman Ave. Tenants' Ass'n v. District of Columbia*, 444 F.3d 673, 685 (D.C. Cir. 2006); *Mitchell v. DCX, Inc.*, 274 F. Supp. 2d 33, 47 (D.D.C. 2003).